## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**LAUREN J. ROSS,**

        **Plaintiff,**                    **Case No. 2:09-cv-00905-GLF-MRA**
                                               **JUDGE GREGORY L. FROST**
    **v.**                                      **Magistrate Judge Mark R. Abel**

**AMERICAN RED CROSS, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the following Motions in Limine filed by Defendant American Red Cross ("the Red Cross")—

1.    Motion in Limine to Exclude Evidence and Argument Regarding: (1) Any Settlements or Consent Decrees or Judgments Involving the Red Cross; (2) Any Governmental Agency Inquiries, Investigations, Correspondence, Fines, or Penalties Involving the Red Cross; and (3) Other Past or Pending Lawsuits Against the Red Cross (ECF No. 178);

2.    Motion in Limine to Exclude Evidence and Argument Regarding the Red Cross's Alleged Spoliation or Destruction of Documents (ECF No. 179);

3.    Motion in Limine to Exclude, for the Purpose of Proving Liability, Evidence and Argument Regarding the Red Cross's Payment of Plaintiff Lauren J. Ross's Medical Expenses (ECF No. 180);

4.    Motion in Limine to Exclude Evidence of Plaintiff's Compensatory Damages Not Produced in Discovery (ECF No. 181);

5.    Motion in Limine to Preclude Dr. Knobler from Offering Opinion Testimony as a

Lay Witness Regarding Plaintiff Lauren Ross's Phlebotomy Aftercare (ECF No. 182);

6.      Motion in Limine to Exclude Misleading and Outdated Photographs of Plaintiff Lauren Ross (ECF No. 183); and

7.      Motion in Limine to Exclude Mr. Michael J. Selsley as a Witness, to Exclude and Preclude Reliance Upon Plaintiff's Purported Tax Returns from 2006, 2007, and 2008, and to Exclude and Preclude Reliance upon any Tax Returns Plaintiff Failed to Produce in Discovery (ECF No. 184).

Also before the Court is the Omnibus Memorandum of Plaintiff Lauren J. Ross in Opposition to Defendant American Red Cross' Seven Motions in Limine.  (ECF No. 189.)  In response to the Plaintiff's Omnibus Memorandum, the Red Cross filed a Reply in Support of its Motions in Limine.  (ECF No. 193.)

As set forth in more detail below, the Court **STRIKES AND DISREGARDS** the Red Cross's Reply.  As to the Red Cross's Motions in Limine, the Court **GRANTS** ECF Nos. 178 and 181, **GRANTS IN PART AND DENIES IN PART** ECF No. 184, and **DENIES** ECF Nos. 179, 180, 182, and 183.

## I.  Background

Plaintiff Lauren J. Ross filed a Complaint in the Franklin County (Ohio) Court of Common Pleas alleging negligence against the Red Cross.  (Compl., ECF No. 2-1.)  The Red Cross removed the case to this Court, invoking federal jurisdiction under 36 U.S.C. § 300105 and *American Natl. Red Cross v. S.G. & A.E.*, 505 U.S. 247, 248, 112 S. Ct. 2465, 120 L. Ed. 2d 201 (1992).  (Notice of Removal, ECF No. 2.)  Plaintiff alleges she suffered physical injury as a result of the negligence of the Red Cross phlebotomist who attempted to draw her blood in

September 2008.  (Compl., ¶ 3.)

In the weeks following the incident at the Red Cross, Plaintiff sought medical care from various medical providers, as she continued to suffer pain.  Over the next several months, eight physicians who treated Plaintiff either diagnosed or opined that Plaintiff suffered from complex regional pain syndrome ("CRPS"), a condition also known as reflex sympathetic dystrophy ("RSD").  Plaintiff alleges that she has been unable to continue her employment as owner of a personal training business because of her injury and that the injury is so debilitating as to permanently affect her ability to work in the future.  (*Id.* at ¶ 5.)  Plaintiff's retained expert in this case, board certified neurologist Robert L. Knobler, M.D., Ph.D., agrees that Plaintiff suffers from CRPS/RSD and has opined that the "needle stick" caused the onset of that condition in Plaintiff.

This Court denied the Red Cross's motion for summary judgment in this case, finding genuine issues of material fact for trial.  (Opinion and Order, ECF No. 176.)  The Red Cross now brings several motions in limine addressed at excluding certain items of evidence from the jury trial in this matter, which is scheduled to commence on July 6, 2012.

## II.  Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize a court to rule on an evidentiary motion in limine, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).  The purpose of a motion in limine is to allow a court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and

expeditious trial. *See Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

Courts, however, are generally reluctant to grant broad exclusions of evidence in limine, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus., Inc.*, 2 F. Supp.2d 1385, 1388 (D. Kan 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). To obtain the exclusion of evidence under such a motion, a party must prove that the evidence is clearly inadmissible on all potential grounds. *See Ind. Ins. Co.*, 326 F. Supp. 2d at 846; *Koch*, 2 F. Supp. 2d at 1388; *cf. Luce*, 469 U.S. at 41. "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp.2d at 846. Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded. *Id.* The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion in limine. *Id.* (citing *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989)).

### III. Discussion

### A.      The Red Cross's Reply Brief

In its written trial procedures applicable to jury trials, the Court provides for motions in limine to be filed three weeks before the final pretrial conference and responses to be filed two weeks before the final pretrial conference. This Court does not contemplate reply briefs in

support of motions in limine.  In view of the nature of motions in limine generally and the compressed time frame of ruling upon them before trial, the Court's trial procedures are intended to modify, pursuant to S. D. Local Rule 1.1(c), the traditional briefing schedule for motions set forth in S. D. Local Rule 7.2(a)(2).  Recognizing this, the Red Cross embeds within its Reply a request for leave to file it for this Court's consideration in ruling upon the motions in limine. (Def.'s Reply 1 n.1, ECF No. 193.)  The Red Cross contends that "good cause" exists for allowing a Reply in this instance.  (*Id.*)

The Court does not find "good cause" for a Reply.  The parties' respective memoranda in support of and in opposition to the Red Cross's motions in limine exhaustively addressed the issues placed before the Court.  The Court accordingly **DENIES LEAVE** to file the Reply and hereby **ORDERS IT STRICKEN** from the Court's docket.

**B.      Consent Decrees, Judgments, Government Agency Investigations, Other Lawsuits, Etc.  (ECF No. 178)**

In its first Motion in Limine, the Red Cross seeks to exclude evidence or argument concerning past litigation involving its blood donation practices and processes.  Specifically, the Motion in Limine seeks exclusion of evidence regarding (1) settlements, consent decrees, or judgments involving the Red Cross, (2) governmental inquiries, investigations, correspondence, fines, or penalties, and (3) other past or pending lawsuits against the Red Cross.

*1. Settlements and Consent Decrees*

With regard to settlements, consent decrees or judgments, the Red Cross specifically seeks to exclude evidence of the 1993 consent decree that the Red Cross entered into with the United States ("Consent Decree" or "Decree") in a case that preceded Plaintiff's September 12, 2008 blood donation.  A brief background on the Consent Decree is instructive.

The Consent Decree is part of a settlement agreement between the Red Cross and the

United States in *United States v. Am. Nat'l Red Cross*, No. 93-0949, 1993 WL 186094 (D.D.C.

May 12, 1993).  The case arose out of the United States' complaint for permanent injunction,

alleging that the Red Cross violated the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301

*et seq.*, and the Public Health and Safety Act, 42 U.S.C. § 201 *et seq.*  The Red Cross did not

admit liability for the alleged violations but instead entered into the Consent Decree, which sets

forth certain policies and procedures regarding blood safety that the Red Cross agreed to

implement and maintain.  *See Am. Nat'l Red Cross*, 1993 WL 186094, at *1.  It is undisputed

that the Consent Decree does not create a private right of action and that the Food and Drug

Administration ("FDA") monitors the Red Cross's compliance with the Decree's terms.

Though Plaintiff acknowledges that the Consent Decree is not and cannot form a basis

for her legal claims, she contends that the Decree is necessary to demonstrate the reason behind

the Red Cross's adoption of certain internal policies that it allegedly violated in this case.

Plaintiff also seeks to use the Decree to demonstrate that the Red Cross's policies are "important

rules, not mere bureaucratic busy-work."  (Pl.'s Opp. 9, ECF No. 189.)  The Red Cross argues

that the Decree is irrelevant to this litigation and that its probative value is substantially

outweighed by the risk of unfair prejudice.

The Court finds that evidence regarding the Consent Decree is inadmissible under Fed.

R. Evid. 402 and 403.  It is entirely unclear how the fact that the Red Cross entered into the

Decree with the United States as part of past litigation would make it more or less likely that the

Red Cross violated its policies or otherwise acted negligently in this case.  *See, e.g., Gribben v.*

*United Parcel Serv., Inc.,* 528 F.3d 1166, 1172 (9th Cir. 2008) (affirming trial court's decision to

exclude an unrelated consent decree between the defendant and the Equal Employment Opportunity Commission because it was irrelevant to the plaintiff's claims). Plaintiff does not explain why she needs to establish the reason that the Red Cross adopted its current policies, merely offering the maxim that "[u]nderstanding the reason for a rule aids in understanding the rule." (Pl.'s Opp. 8, ECF No. 189.) The existence or nonexistence of the Consent Decree does not inform the key issue of whether the Red Cross was negligent in attempting to draw Plaintiff's blood on September 12, 2008, or in its "aftercare" following the needlestick injury.

Even if the Consent Decree has relevance as evidentiary background, its probative value is substantially outweighed by the risks of unfair prejudice and confusion. Presenting the Consent Decree to the jury would very likely confuse the issues and lead the jury to believe that Plaintiff's claims derive from the Decree itself. The parties would then be forced to explain and relitigate old issues that have, at best, only minimal relevance to the present case. Evidence of settlement negotiations can also be viewed as a concession of liability, which is unfairly prejudicial for the same reasons as those underlying Fed. R. Rule 408 (barring evidence of settlement negotiations to prove validity of a disputed claim). *See*, *e.g.*, *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 805 (6th Cir. 2007). These risks substantially outweigh the minimal probative value of this evidence.

Whatever marginal relevance the Consent Decree has is substantially outweighed by the risks of unfair prejudice and confusion of the issues. The Court therefore **GRANTS** the Red Cross's motion in limine to exclude evidence regarding the Consent Decree.

2. *Governmental Agency Inquiries, Investigations, Correspondence, Fines, or Penalties Involving the Red Cross*

The Red Cross also seeks to exclude evidence related to governmental agency inquiries,

investigations, correspondence, fines, or penalties involving the Red Cross but not involving Plaintiff or the September 12, 2008 incident. Specifically, the parties dispute the admissibility of certain adverse determination letters ("ADLs") that the FDA issued to the Red Cross for violating the Consent Decree or other laws and regulations. The ADLs serve to notify the Red Cross of its violation(s) and assess appropriate penalties and fines.

The Red Cross asserts that Plaintiff and her September 12, 2008 blood donation have never been the subject of an ADL and argues that unrelated ADLs are irrelevant, unfairly prejudicial, and improper character evidence in this case. Plaintiff does not appear to dispute the fact that her injury has not been the subject of an ADL. Instead, Plaintiff cites a January 13, 2012 ADL informing the Red Cross of violations that occurred in regions other than the Central Ohio Region, where Plaintiff's blood donation took place, and that involve documents created over various time periods, none of which appear to include September 12, 2008. Plaintiff does not argue that these violations relate to her specific blood donation, but instead argues that these examples "correspond to the misconduct alleged in this action." (ECF No. 189, at 6.)[1]

The Court finds that all ADLs that involve the Red Cross but do not involve Plaintiff or the September 12, 2008 incident are inadmissible. As to the Red Cross's argument that the ADLs are classic character evidence that is inadmissible under Fed. R. Evid. 404(b), the Court notes that it is unclear whether Rule 404(b) applies to corporations. *See Colley v. CSX Transp., Inc.*, No. 1:07cv1175, 2009 U.S. Dist. LEXIS 49050, at *3-*4 (S.D. Miss. May 27, 2009) (citing

---

[1] Plaintiff states, without support, that the ADLs will establish that the Red Cross lost and failed to review several of Plaintiff's forms. The Court is unable to draw this conclusion without any reference to a specific ADL or suggestion as to where this information might be found.

22 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5233 (1978)).[2] But this Court need not decide whether Rule 404(b) applies here in order to decide that exclusion of the ADLs is warranted in this case.

The primary value to Plaintiff's case of the ADLs, which are unrelated to the incident at issue here, is in their suggestion that the Red Cross must have violated certain rules in this case because it did so in other instances. Even if this information were probative of a fact in this litigation, its probative value is substantially outweighed by the risk of unfair prejudice. *See Bright v. Firestone Tire & Rubber Co.*, 756 F.2d 19, 23 (6th Cir. 1984) (affirming the district court's decision to exclude a congressional report regarding the safety of defendant's product; the report did not prove that the product was defective or caused the plaintiff's injuries in that particular case). As in *Bright*, the probative value of the Red Cross's unrelated violations here is minimal. But there is a substantial risk that the jury, looking at the Red Cross's unrelated violations in other regions and at other times, would draw an improper conclusion regarding the Red Cross's conduct in this case. The Court therefore **GRANTS** the Red Cross's motion in limine to exclude this evidence under Fed. R. Evid. 403.

### 3. *Other past or pending lawsuits*

The Red Cross seeks to exclude at trial any evidence of the filing or content of other lawsuits against The Red Cross. In response, Plaintiff cites several lawsuits filed against the Red Cross in which other plaintiffs alleged that they suffered needlestick injuries. Plaintiff asserts that she intends to use these lawsuits as evidence of "foreseeability and proximate causation" and

---

[2]Fed. R. Evid. 404(b)(1) provides: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

notes that such evidence is "especially crucial because many jurors might otherwise not believe that such grave injuries as Plaintiff suffered could result or be expected to result from a mere needlestick." (ECF No. 189, at 9.)

The Court finds that evidence of the filing or content of other lawsuits involving the Red Cross is inadmissible under Fed. R. Evid. 402 and 403. First, Plaintiff does not explain how the fact that Plaintiff's injuries were foreseeable is relevant to the question of whether the Red Cross acted negligently. There is no dispute that the Red Cross owed Plaintiff a duty of care, rendering foreseeability of Plaintiff's injury a collateral issue, at best. *See Wallace v. Ohio Dep't of Commerce*, 96 Ohio St. 3d 266, 773 N.E. 2d 1018, 2002-Ohio-4210, at ¶ 23 (stating the oft-noted principle of Ohio negligence law that "the existence of a duty depends upon the foreseeability of harm"). And to the extent Plaintiff intends to use the lawsuits to establish foreseeability in order to show proximate cause, *see Mussivand v. David*, 45 Ohio St. 3d 314, 321, 544 N.E. 2d 265 (1989), the argument for admissibility fares no better. Plaintiff fails to explain how another lawsuit informs the issue of whether the needle stick proximately caused the onset of Plaintiff's CRPS/RSD in *this* case.

Second, even if these allegations were relevant to Plaintiff's case, whatever marginal relevance they have is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See, e.g, McLeod v. Parsons Corp.*, 73 F. App'x 846, 854 (6th Cir. 2003) (finding that the district court did not abuse its discretion in excluding evidence of other lawsuits filed against the defendant). Unsubstantiated allegations from other individuals, in other cases and under different circumstances, are of minimal probative value in determining whether the Red Cross's alleged negligence proximately caused Plaintiff's injuries in this case. *See id*. This

value is outweighed by the risk that the jury will draw improper conclusions from other incidents in which the Red Cross's actions allegedly caused injuries. *See id.* (stating that, because other lawsuits against the defendant involved a multitude of facts and circumstances, "the potential for prejudice that would have accompanied this evidence would have substantially outweighed its probative value, and this evidence would have misled the jury"). Such evidence may also invite mini-trials about facts and circumstances that may not be similar to the present case. *See, e.g., Outley v. City of New York*, 837 F.2d 587, 595 (2d Cir. 1988) (stating that admitting evidence of other lawsuits invites detailed inquiries, denials, and explanations that would likely confuse the issues of the present case). If Plaintiff seeks to show the jury that her injuries were possible from the Red Cross's alleged negligence, she has far better ways of doing so.

Finding that evidence regarding the Consent Decree, ADLs, and other past or pending lawsuits involving the Red Cross is inadmissible, the Court hereby **GRANTS** the Red Cross's motion in limine to exclude them at trial.

### C. Defendant's Alleged Spoliation or Destruction of Documents (ECF No. 179)

The Red Cross asks for an in limine order excluding evidence and argument regarding its alleged "spoliation or destruction of documents." Specifically, the Red Cross asks the Court to exclude, under Fed. R. Evid. 401, 402, and/or 403, any reference to its spoliation or destruction of Donor Reaction / Injury Record forms ("DRIRs") during the post-September 19, 2008 time period.[3] Though such documents existed at one time, the Red Cross has been unable to locate them and was therefore unable to produce them during discovery.

---

[3]The Red Cross produced to Plaintiff DRIRs from the time period covering September 12, 2008 to September 19, 2008.

Recently, this Court denied Plaintiff's motion for, among other things, an adverse inference of negligence as a discovery sanction for the Red Cross's "spoliation" of the post-September 19, 2008 DRIRs.  (Opinion and Order, ECF No. 185.)  The Court found the harsh sanctions of an adverse inference or the exclusion of any Red Cross evidence of proper aftercare inappropriate under the circumstances.  (*Id.* at 5-10.)  The Court's ruling does not, however, necessarily mean that the Red Cross is entitled to keep from the jury the fact that the post-September 19, 2008 DRIRs that once existed are now gone.  Indeed, this Court noted that "[t]he fact that the documents are missing is something the Plaintiff can explore on cross-examination with an appropriate witness."  (*Id.* at 10.)  Contrary to the Red Cross's contention that any "spoliation" of the DRIRs is not relevant to any issue in the case, the loss of the evidence could conceivably affect the weight the jury may give to the testimony of Red Cross witnesses regarding any "aftercare" provided to Plaintiff.

Finding no basis to categorically exclude evidence or argument concerning "spoliation" of the DRIRs at this time, the Court **DENIES** the Red Cross's motion in limine to exclude them.

### D.     Red Cross's Payment of Medical Expenses (ECF No. 180)

It is undisputed that the Red Cross has paid $9,499.90 toward Plaintiff's medical expenses.  (Defs.' Mot. in Limine 2, ECF No. 180.)  The Red Cross asks the Court to exclude evidence related to its payment of Plaintiff's medical expenses for the purposes of proving liability.

The Red Cross invokes Rule 409 of the Federal Rules of Evidence, which provides: "Evidence of the promise or offer to pay, or actual payment of medical, hospital, or like expenses resulting from an injury is inadmissible to prove liability for that injury."

12

While the Red Cross's motion falls within the ambit of Rule 409, Plaintiff has indicated "no intention of arguing that [the Red Cross's] payment of some of Plaintiff's medical expenses is evidence of its negligence."  (Pl.'s Opp'n 11, ECF No. 189.)  Since there is no indication that the evidence Defendants request this Court to exclude will be used for an improper purpose, an order in limine would be premature at this time.  Accordingly, the Court **DENIES** Defendants' Motion in Limine regarding the payment of medical expenses.

### E.    Damages Evidence not Produced in Discovery (ECF No. 181)

The Red Cross asks that this Court (1) exclude from trial any evidence of Plaintiff's compensatory damages that Plaintiff has not produced in discovery and (2) limit the damages evidence available to Plaintiff at trial to the universe of evidence properly produced in discovery. The Red Cross's motion in limine lists specific documents that it has received during the discovery process and requests that Plaintiff be limited at trial to using only these documents as evidence of compensatory damages.

In her response, Plaintiff appears to have interpreted the Red Cross's motion as seeking to limit the *type* of evidence, as opposed to the *scope*, that she may present at trial.  (ECF No. 189, at 11 ("[Defendant's] motion suggests that only documents submitted as exhibits may form the basis for award of compensatory damages at trial.").)  Plaintiff argues that she intends to (and is entitled to) rely on witness testimony in addition to documentary evidence to prove damages. Plaintiff argues that the Court should deny Defendant's motion because it "totally ignores Plaintiff's entitlement to relay [sic] on testimony to support her damages claim."  (ECF No. 189, at 11.)

Contrary to Plaintiff's suggestion, the Court construes the motion as requesting a limit on

the *scope* of evidence and not the *type* of evidence that Plaintiff may present at trial.  The issue

for the Court is whether Plaintiff may present at trial "any evidence," through witness testimony,

documents, or other means, of damages that she has not disclosed in discovery.  (ECF No. 181,

at 9.)

Under Fed. R. Civ. P. 37(c)(1), a party that fails to provide information or supplement

previously disclosed information in accordance with its discovery obligations is precluded from

using that information at trial, unless the failure was substantially justified or harmless.  Absent

sufficient justification, the Court may proactively limit the information and testimony that the

sanctioned party is permitted to use at trial.  *See, e.g., Precision Seed Co. v. Consol. Grain &*

*Barge Co.*, No. 3:03-cv-079, 2006 WL 1281689, at *7 (S.D. Ohio May 8, 2006) (granting the

defendant's pre-trial motion in limine and limiting the plaintiff's damages testimony at trial to

the information that plaintiff disclosed during discovery).

Here, the Red Cross served Plaintiff with an interrogatory seeking an itemized list of

"any and all damages you [Plaintiff] are seeking, including but not limited to, damages for past

medical care, present or future loss of income; loss of enjoyment of life; pain and suffering;

mental anguish; annoyance; aggravation; inconvenience and any other economic or non-

economic damages."  (ECF No. 181-1, at 10.)[4]  The interrogatory further requested "a

specification of the amount of each item or category of damages sought, together with a full

explanation of how that amount was derived at and a description of all data, assumptions,

_____

[4]Plaintiff had an independent duty to disclose this information pursuant to Rule 26(a).
Fed. R. Civ. P. 26(a)(1)(A)(iii).  The parties agreed to forego initial disclosures (ECF No. 8) but
Defendant "requested the same damages information required by initial disclosures in its first
discovery requests to Plaintiff."  (ECF No. 181, at 3.)

hypotheses and calculations relied upon." (*Id.*)

In response, Plaintiff provided an itemized list of her damages through December 21, 2009. She also produced various medical bills and documents in response to Defendant's multiple follow-up requests. Plaintiff had a duty, however, to supplement her discovery responses with any additional or corrective information that has not otherwise been made known to Defendant during the discovery process. Fed. R. Civ. P. 26(e)(1). Plaintiff does not argue that her failure to do so was substantially justified or is harmless. Thus, to the extent that additional information regarding Plaintiff's alleged damages exists, and to the extent that such information was not produced or otherwise made known to the Red Cross during discovery (in depositions, for example), Plaintiff is precluded from introducing that information—through documentary evidence, witness testimony, or any other means—at trial. Fed. R. Civ. P. 37(c)(1); *see also Precision Seed Co.*, 2006 WL 1281689, at *7.

Plaintiff attempts to distort the issue by suggesting that there is some information regarding damages, on which witnesses intend to testify at trial, that "could have been learned, had [Defendant] asked the right questions of the right witnesses." (ECF No. 189, at 11.) The Court is not persuaded by this argument. It was Plaintiff's responsibility to supplement her discovery responses with any new or additional information that is responsive to Defendant's interrogatory. Fed. R. Civ. P. 37(c)(1); *Precision Seed Co.*, 2006 WL 1281689, at *5 (citing Advisory Committee Notes to 1993 Amendment to Rule 26(e)). To the extent Plaintiff failed to do so, she may not surprise the Red Cross with this information at trial.

Subject to the qualifications set forth above, Defendant's Motion in Limine to Exclude Evidence of Plaintiff's Compensatory Damages Not Produced in Discovery (ECF No. 181) is **GRANTED**.

**F.    Lay Opinion Testimony of Dr. Knobler (ECF No. 182.)**

This Court previously issued an order excluding Plaintiff's causation expert, Dr. Robert Knobler, from testifying as to the appropriate standard of care.  (Opinion and Order, ECF No. 135.)  Pursuant to Fed. R. Evid. 701, the Red Cross asks for an additional order in limine that would prohibit Dr. Knobler from offering opinion testimony as a lay witness concerning Plaintiff's phlebotomy "aftercare" treatment.  (Def.'s Mot. in Limine 1, ECF No. 182.)

In response, Plaintiff represents that she "will not ask Dr. Knobler to express any opinions concerning the adequacy of [the Red Cross's] aftercare of Plaintiff."  (Pl.'s Opp'n 12, ECF No. 189.)  Given Plaintiff's representation to the Court, there is no need for an in limine order at this time.  Accordingly, the Court **DENIES** the Red Cross's Motion in Limine regarding Dr. Knobler's opinion testimony.

**G.    Photographs of Plaintiff Taken in 2004 (ECF No. 183)**

The Red Cross asks the Court to preclude Plaintiff from showing to the jury photographs of her that were taken in 2004.  The photographs in question show Plaintiff in October 2004 following her victory in a national bodybuilding competition, when Plaintiff reportedly weighed approximately 114.5 pounds — about 43 pounds lighter than Plaintiff weighed in July 2008, just two months before the incident giving rise to this litigation.

The Red Cross contends the photographs in question are inadmissible for three separate reasons.  First, Defendants argue that since "the photographs do not accurately depict Ms. Ross

*at the time* of" the incident they do not meet the authentication standards set forth by Fed. R.

Evid. Rule 901(a). (Def.'s Mot. in Limine 2, ECF No. 183.) Second, the Red Cross argues that

the photographs are not relevant, and therefore inadmissible under Fed. R. Evid. 402, because

they do not accurately depict Plaintiff at or near the time of the incident at issue in this case. (*Id.*

at 3.) Finally, the Red Cross argues that regardless of any "limited relevance" the photographs

may provide, they are inadmissible under Fed. R. Evid. 403 because "the risks of unfair

prejudice and of misleading the jury substantially outweigh any limited potential value" the

evidence may contain. (*Id.*) For her part, Plaintiff argues that the photographs are not intended

to illustrate her physical appearance in or about September 2008, but, rather, would be offered

"for the purpose of establishing her lifelong participation in athletic endeavors," which she

contends to have been negatively impacted by her injury. (Pl.'s Opp'n 12, ECF No. 189.)

The Court finds that none of the Red Cross's arguments warrants an in limine order

excluding the photographs. As to the authentication issue, Fed. R. Evid. 901(a) is intended to

ensure that evidence offered to the jury "is what the proponent claims it is." Plaintiff may not,

and has no intention to "offer 2004 photos to illustrate [P]laintiff's physical appearance as of

September 2008." (Pl.'s Opp'n 12, ECF No. 189.) As long as Plaintiff substantially identifies

the photographs in a manner sufficient to support a finding that the 2004 photographs are what

Plaintiff claims they are, the inquiry under Rule 901(a) is over.

As to the Red Cross's relevance arguments under Fed. R. Evid. 402 and 403, the Court is

also unpersuaded. The 2004 photographs may be offered to the jury for the purpose of

demonstrating what they depicted when they were taken. *See Shahid v. City of Detroit*, 889 F.2d

1543, 1546 (6th Cir. 1989). In light of Plaintiff's asserted purpose of introducing the

photographs (*i.e.*, to demonstrate her "lifelong participation in athletic endeavors"), the Court

finds that the evidence is relevant to Plaintiff's claims regarding "pain, suffering and mental

anguish" resulting from the alleged injury. (Compl. 2, ECF No. 3.) Moreover, the Court does

not find that the probative value of this evidence is substantially outweighed by any risk of unfair

prejudice or misleading the jury. The Red Cross's arguments for inadmissibility are matters that

go more to the weight, rather than the admissibility, of the photographs at issue. The concerns

articulated by the Red Cross are more appropriately addressed on cross examination, where it

will have the opportunity to challenge the differences in Plaintiff's physique at the time of the

alleged injury in 2008.

For these reasons, the Court **DENIES** Defendant's Motion in Limine with respect to the

2004 photographs of Plaintiff.

### H. Exclusion of Michael J. Sensley and Tax Returns Not Produced During Discovery (ECF No. 184)

In its final Motion in Limine, the Red Cross seeks an order excluding Mr. Michael

Sensley as a witness for Plaintiff. (ECF No. 184.) In that same Motion, the Red Cross also asks

the Court to exclude Plaintiff's "purported tax returns" from tax years 2006, 2007, and 2008 and

to exclude from evidence any tax returns that Plaintiff failed to produce in discovery. (*See id.*)

The events underlying the Red Cross's Motion reveal the Red Cross's difficulty in

obtaining tax returns of Plaintiff during discovery. Despite the Red Cross's considerable efforts

within and outside the discovery process, Plaintiff did not produce her tax returns for years 2006,

2007, and 2008 until December 16, 2011 — two weeks before the discovery deadline. (Def.'s

Memo. in Support of Mot. in Limine 1-2, ECF No. 184.) Those tax returns contained the

signature of Mr. Sensley as the preparer, marking the first time that the Red Cross learned of Mr.

18

Sensley as a person with discoverable information relevant to the case.  (*Id.*)  Though the Red Cross attempted to subpoena Plaintiff's tax documents from Mr. Sensley in January 2012, Plaintiff moved to quash the subpoena to Mr. Sensley, taking the position that discovery was closed.  (*Id.* at 2; *see also* Pl.'s Mot. to Quash, ECF No. 131.)  Since the filing of the Red Cross's Motion in Limine, the Magistrate Judge denied Plaintiff's Motion to Quash the subpoena to Mr. Sensley, opening the door for the Red Cross to obtain the tax documents it previously sought from him.  (*See* Order, ECF No. 187.)

In her opposition to this Motion in Limine, Plaintiff does not disclaim any intention to call Mr. Sensley as a witness at trial.  In arguing for denial of the Red Cross's Motion, Plaintiff takes the simple view that the Magistrate Judge's decision denying the motion to quash means the Red Cross can now depose Mr. Sensley prior to trial and that the Court should, for that reason alone, deny the Red Cross's motion to exclude.  (Pl.'s Opp'n 12, ECF No. 189.)  But the matter is not quite that simple.[5]  As the Red Cross correctly points out, Plaintiff failed to disclose Mr. Sensley as a potential witness in its responses to the Red Cross's first set of interrogatories, in which the Red Cross specifically requested the names of each person with knowledge relevant to the case.  (Def.'s Mot. 10 and Exh. A-1, ECF No. 184.)  What's more, Plaintiff does not dispute the Red Cross's contention that Plaintiff "never mentioned Mr. Sensley at any point during this litigation until the eve of the close of discovery."  (*Id.* at 11.)

Fed. R. Civ. P. 26(e) requires a party to, "in a timely manner," supplement the party's

---

[5]Both the Red Cross's Motion and the Plaintiff's Opposition give the impression that the subpoena to Mr. Sensley, which the Magistrate Judge refused to quash, was a subpoena for appearance at deposition.  But this is not so.  The Red Cross served only a deposition duces tecum, seeking records .  (*See* Subpoena, ECF No. 130.)

discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Even if Mr. Sensley was not involved with Plaintiff's tax preparation at the time Plaintiff responded to the Red Cross's interrogatories seeking witness information, the record shows there was ample opportunity for her to supplement her disclosures and reveal Mr. Sensley well before the discovery deadline.

Having not disclosed Mr. Sensley in a timely manner under Fed. R. Civ. P. 26(e), Plaintiff is precluded from calling him as a witness "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In her Opposition to the Red Cross's Motion in Limine, Plaintiff makes no argument concerning substantial justification or harmlessness of her failure to supplement. Indeed, the record shows the opposite: Plaintiff showed no justification for the late disclosure of Mr. Sensley and then exacerbated the late disclosure by moving to quash the Red Cross's attempt to subpoena Mr. Sensley's records concerning Plaintiff. With the trial just a few weeks away, the Court sees no reason to reward Plaintiff's gamesmanship in seeking to hide Mr. Sensley's discoverable information and testimony from the Red Cross. The Court therefore **GRANTS** the Red Cross's motion to exclude Mr. Sensley as a witness at trial.

In addition to excluding Mr. Sensley, the Red Cross moves for an in limine order excluding (1) tax returns that Plaintiff failed to produce in discovery and (2) the 2006, 2007, and 2008 tax returns that Plaintiff did not produce until December 16, 2011. The Court excludes the first set of tax returns, but not the second.

As noted previously, Fed. R. Civ. P. 37(c) provides for exclusion of evidence that has not

produced in discovery, as required by Fed. R. Civ. P. 26(a) or 26(e). To the extent Plaintiff seeks to rely on tax returns not produced in response to the Red Cross's valid requests, the Court **GRANTS** the Red Cross's motion to exclude them. As Plaintiff has not provided any substantial justification for failing to produce them or any argument that her failure was harmless, this Court excludes these returns under Rule 37(c). The exclusion applies not only to tax returns that Plaintiff completely failed to produce, but also to the state and local returns that the Red Cross represents as not having been produced until after the close of discovery. (*See* Def.'s Mot. 13-14, ECF No. 184.) Untimely disclosure of evidence, without substantial justification or indication of harmlessness, is also a valid reason to exclude evidence under Rule 37(c). *See Caudell v. City of Loveland*, 226 F. App'x 479, 482 (6th Cir. 2007) (upholding trial court's exclusion of document produced four months after discovery deadline).

As to the 2006, 2007, and 2008 tax returns that Plaintiff produced to the Red Cross in mid-December 2011, the Red Cross argues that they should be excluded notwithstanding the Red Cross having received them prior to the discovery deadline (albeit only shortly before) and having had the opportunity to question Plaintiff about them at her deposition. Citing Plaintiff's deposition testimony, the Red Cross argues that these documents should be excluded because Plaintiff is unable to authenticate them and expressed little to no knowledge about their preparation and/or the information upon which they were based. (Def.'s Mot. 15, ECF No. 184.) And because this Court has excluded Mr. Sensley as a witness, the Red Cross argues that there is no witness capable of authenticating those tax returns or of showing that they have actually been filed with the Internal Revenue Service. (*Id.* at 15-16.)

Though the Court acknowledges that Plaintiff's testimony about the tax returns is

somewhat alarming, the Court does not find a blanket exclusion appropriate at this time. Even though Plaintiff may not have been able to authenticate the tax returns when she was deposed, that fact does not necessarily foreclose her ability to do so at trial.[6] Moreover, there remains the possibility that the tax returns could be authenticated as public records under Fed. R. Evid. 901(b)(7) prior to trial. Accordingly, because of the possibility that authentication could occur at trial, the Court **DENIES** the Red Cross's motion in limine with respect to the 2006, 2007, and 2008 tax returns produced by Plaintiff before the discovery deadline.

## IV. Conclusion

As set forth above, the Red Cross's Reply in Support of its Motions in Limine (ECF No. 193) is **ORDERED STRICKEN** from the Court's docket. As to the Motions in Limine themselves, the Court rules as follows—

- Defendant's Motion in Limine to exclude evidence and argument regarding settlements, consent decrees, governmental investigations, other lawsuits, etc. (ECF No. 178) is **GRANTED;**
- Defendant's Motion in Limine to exclude evidence and argument regarding the Red Cross's alleged spoliation or destruction of documents (ECF No. 179) is **DENIED**;
- Defendant's Motion in Limine to exclude evidence of the Red Cross's payment of plaintiff's medical expenses (ECF No. 180) is **DENIED;**
- Defendant's Motion in Limine to exclude evidence of compensatory damages not

---

[6]Of course, if Plaintiff is able to do so, the Red Cross will have the opportunity to impeach Plaintiff with her prior deposition testimony to the contrary.

produced in discovery (ECF No. 181) is **GRANTED**;

- Defendant's Motion in Limine to preclude Dr. Robert Knobler from offering lay opinion testimony (ECF No. 182) is **DENIED**;

- Defendant's Motion in Limine to exclude photographs of Plaintiff (ECF No. 183) is **DENIED**; and

- Defendant's Motion in Limine to exclude Michael J. Selsley as a witness and to exclude and preclude Plaintiff's reliance on certain tax returns (ECF No. 184) is **GRANTED IN PART AND DENIED IN PART**.

As with all decisions in limine, these rulings are subject to modification should the facts or circumstances at trial differ from that which has been presented in the pretrial motions and memoranda.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**